

# NUMBER 13-17-00594-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI–EDINBURG

---

**UNIT DRILLING COMPANY,**                                                    **Appellant,**

**v.**

**MICHAEL GILMORE,**                                                               **Appellee.**

---

### On appeal from the County Court at Law No. 3
### of Nueces County, Texas.

---

# CONCURRING MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Perkes**
**Concurring Memorandum Opinion by Justice Perkes**

I respectfully concur. While I agree with the Court's decision to reverse the trial court's judgment and remand the case for a new trial, I disagree with the majority's conclusion that the trial court abused its discretion in denying a mistrial based on Gilmore's alleged attorney misconduct or juror misconduct. *See Waffle House, Inc. v.*

*Williams*, 313 S.W.3d 796, 813 (Tex. 2010) ("Denial of a motion for new trial is reviewed for abuse of discretion.").

Here, the at-issue evidence, a fourteen page contract titled "Drilling Bid Proposal and Daywork Drilling Contract," contained Unit's liability and insurance information and was entered into evidence without objection.[1] *See* TEX. R. APP. P. 33.1(a)(1)(A) (providing that an objection or request must be stated with "sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context."); *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 510 (Tex. 2018); *Am. Gen. Fire & Cas. Co. v. McInnis Book Store, Inc.*, 860 S.W.2d 484, 488 (Tex. App.—Corpus Christi–Edinburg 1993, no writ).

Our *McInnis* case, discussed by both parties on appeal, is particularly instructive. *McInnis*, 860 S.W.2d at 488. *McInnis* involves a store owner seeking payment under its policy following a fire. *Id.* at 487. An exhibit referencing the store owner's criminal history, namely that he had been acquitted of arson, remained unredacted after it was

---

[1] The transcript, in relevant part, reads as follows:

GILMORE:  Your Honor, we would offer Plaintiff's Exhibit No. 51.

UNIT:  And may we approach just very quickly, Your Honor?

THE COURT: Yes.

UNIT:  Your Honor, we have no objection, but there are a number of provisions that need to be redacted.

GILMORE:  Yeah, I'm not gonna publish it.

THE COURT: Okay.

GILMORE:  Your Honor, we offer Plaintiff's Exhibit 51.

UNIT:  No objection, Your Honor.

THE COURT: It would be admitted.

2

admitted into evidence—despite its admission being explicitly contingent on its sanitation.

COURT:          Are you going to object to it?

APPELLANT:      As long as Counsel will represent to me that, you know, it's not going to go to the jury without it being sanitized and having the objection, [sic] *about the material about the criminal trial*.

COURT:          It's going to be admitted subject to it being sanitized.

*Id.* (emphasis added). The trial court denied appellant's motion for new trial. *Id.* On review, we clarified the duties of the offering party and objecting party:

> [T]he party offering evidence which the trial court admits expressly subject to excision of specifically identified prejudicial information has a duty to remove the prejudicial portion before submitting the evidence to the jury. . . . The objecting party, however, must provide a reviewing court with a record that shows that the objectionable portion of the evidence was clearly identified either in the objection or in the ruling of the trial court.

*Id.* at 488.

Although vague, Appellant's statement in *McInnis*, "about the material about the criminal trial," still identifies the objectionable portion of the exhibit. *Id.* Whereas here, Unit's statement that "there are a number of provisions that need to be redacted" does not. On appeal, Unit argues that it clearly identified the objectionable portion of Exhibit 51 in its motion in limine, and its statement that "there are a number of provisions that need to be redacted" was in reference to that. However, the motion in limine that Unit references, again provides little guidance, as it was a forty-three-issue motion.

Where an objecting party is unable to show "that the objectionable portion of the evidence was clearly identified either in the objection or in the ruling of the trial court," reprieve cannot then be found in the form of an attorney or jury misconduct claim. *See McInnis*, 860 S.W.2d at 488. *Id.* To hold otherwise would altogether eliminate the duty

3

imposed on the objecting party, as delineated in *McInnis*. *Id.* Given the trial court's proper application of *McInnis*, I do not believe that the trial court abused its discretion in denying Unit's motion for mistrial on this basis. *See Waffle House*, 313 S.W.3d at 813. Instead, I find reversal and remand is appropriate on grounds of newly discovered evidence.

## I.  APPLICABLE BACKGROUND

The nearly two-week trial concluded on April 28, 2017, with a jury awarding Gilmore $1,025,000 in actual damages[2] and $8,000,000 in exemplary damages. The trial court applied a statutory cap,[3] reducing Gilmore's judgment against Unit to $943,750 in actual damages and $1,885,000 in exemplary damages, plus pre-judgment interest.

Following rendition of judgment, Unit filed a motion for new trial alleging, among other things, that there was newly discovered evidence regarding Gilmore's loss of earning capacity which had been "concealed" by Gilmore at trial.

At a hearing on the motion, Eric Cantu, owner of Star Wrecker Service LLC (Star), a private property towing company, testified he hired Gilmore to work as an independent contractor. Cantu said Gilmore worked for him in 2014 and 2015 as a "spotter" and "tagger," tasked at tagging vehicles in private commercial lots or apartment complexes to ensure registration compliance. Cantu stated Gilmore also assisted tow trucks in moving vehicles. Gilmore worked part-time, an estimated two to three times a week, and he was always paid in cash by Cantu. Cantu paid Gilmore about $100 to $175 a week. At no

---

[2] The actual damages award comprised $575,000 for past damages and $450,000 for future loss of earning capacity. The jury did not award any damages for future pain, mental anguish, disfigurement, impairment, or medical expenses.

[3] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.008.

4

point did Gilmore file employment paperwork with the company. Cantu testified that the work was consistent, and Gilmore's employment was secured as a favor to Gilmore and his wife Monet; at the time, Monet worked for Cantu as his company's operations manager.

Ray Uresti Jr., a former employee at Star and Monet's current employer, also testified he worked with Gilmore in 2014 and 2015. Uresti testified that on two occasions, he witnessed Gilmore use "go-jacks." Uresti explained that a "go-jack," which weighs more than seventy-five pounds, is used to lift the front tire of a parked vehicle to push the vehicle into position for a tow truck to pick up. Uresti testified he also recalled seeing Gilmore's attorney at Star, and he later asked Monet why Gilmore was no longer with the company. Uresti was told that Gilmore stopped working at Star at the alleged direction of his attorney.

The information obtained through these two individuals during the motion for new trial hearing ran contrary to medical records, interrogatory responses, Gilmore's deposition statements, Monet's deposition statements, and Gilmore and Monet's testimony at trial. Prior to trial, the record indicates Unit explicitly requested the identity of "all employers for whom [Gilmore had] worked in the past 10 years, including the dates of employment and termination, salary or wage, immediate supervisor, nature of employment and reason for termination." Unit separately inquired as to "all jobs and employment held since the accident made the basis of this lawsuit." In response, Gilmore disclosed his employment with "Accurate Valve Services, Inc. (owned by Craig Chism), Service Hand, Craig Chism" and directed Unit to "[a]lso see deposition of Michael Gilmore."

5

Throughout three separate depositions, Gilmore denied working in any capacity after he was laid off from his employment with Accurate in May 2013.

[Counsel]: Have you applied for any kind of job or work since being separated from [Accurate]?

[Gilmore]: No.

. . . .

[Counsel]: Okay. Then tell us—tell us about what you did after your lay off. Did you go back to work anywhere else?

[Gilmore]: No, sir.

[Counsel]: Why is that?

[Gilmore]: I was in pain.

Gilmore's provided the same testimony at trial:

[Counsel]: Okay. Thank you. Now, I want to jump ahead and, very briefly, we talked about the last day you ever worked was in May of 2013, correct?

[Gilmore]: Yes, ma'am.

[Counsel]: You have not worked a single day since that time?

[Gilmore]: No, ma'am.

Gilmore's medical records, some of which contain self-reported work history, are also silent as to any employment after 2013. The trial court denied Unit's motion for new trial. This appeal ensued.

## II. NEWLY DISCOVERED EVIDENCE

Unit argues that the trial court erred in denying Unit's motion for new trial based on newly discovered evidence. Unit contends that Gilmore's former employees revealed

6

post-trial that Gilmore concealed his earning capacity and physical capabilities before and during trial.

A party seeking a new trial on grounds of newly-discovered evidence must demonstrate to the trial court that (1) the evidence has come to its knowledge since the trial, (2) its failure to discover the evidence sooner was not due to lack of diligence, (3) the evidence is not merely cumulative or for purposes of impeachment, and (4) the evidence is so material it would probably produce a different result if a new trial were granted. *Waffle House*, 313 S.W.3d at 813; *see Banker v. Banker*, 517 S.W.3d 863, 877 (Tex. App.—Corpus Christi–Edinburg 2017, pet. denied).

## A.    Newly Discovered Evidence and Due Diligence

The satisfaction of the first *Waffle House* factor is undisputed by either party here. *See Waffle House*, 313 S.W.3d at 813. Unit's counsel testified she received a phone call months after the trial, tipping her off to the fact that Gilmore had been employed after 2013—contrary to statements at trial and all previous depositions and interrogatories.

Gilmore argues that Unit is unable to overcome the second *Waffle House* factor: due diligence. *See id.* I disagree. Gilmore was deposed on three separate occasions, and each time—including at trial—Gilmore explicitly denied working since leaving Accurate. His wife also made similar unequivocal statements regarding his non-employment. This case is therefore distinguishable from cases affirming the trial court's denial of a motion for new trial, where testimony on material issues was not plainly false. *Cf. Garcia v. Allen*, 28 S.W.3d 587, 603 (Tex. App.—Corpus Christi–Edinburg 2000, pet. denied) (holding counsel failed to follow up on a line of questioning that would have revealed pertinent information and concluding that the witness's deposition testimony did

7

not represent an attempt to hide evidence); *Loom Craft Carpet Mills, Inc. v. Gorrell*, 823 S.W.2d 431, 432 (Tex. App.—Texarkana 1992, no writ) (differentiating between a plaintiff who "perjures himself to induce a large award for lost earning capacity" and a plaintiff using the phrase, "I think"). In *Loom Craft*, the respondent also failed to depose Gorrell to ascertain his work history, further supporting the appellate court's determination that the respondent failed to show due diligence. 823 S.W.2d at 432. Unlike in *Loom Craft*, Gilmore and his wife were properly deposed and provided testimony that, according to the newly discovered evidence, was false. I would decline to hold, as Gilmore urges, that due diligence would require a defendant to depose a spouse's former employers to learn of an individual's employment history that purportedly does not exist. Unit satisfied the second *Waffle House* factor. 313 S.W.3d at 813.

## B. Not Merely Cumulative nor Impeaching, and Materiality

The third and fourth *Waffle House* factors require ancillary analyses: the party seeking a new trial must show that the newly-discovered evidence is not merely cumulative nor impeaching and that the evidence is so material it would probably produce a different result. *Id.*; *New Amsterdam Cas. Co. v. Jordan*, 359 S.W.2d 864, 866 (Tex. 1962). Although the newly discovered evidence here would serve to impeach Gilmore, going to Gilmore's credibility, the evidence also goes to the extent and severity of Gilmore's injuries; i.e., whether such injuries are so permanent as to prevent him from ever returning to labor-intensive employment.

Gilmore argues that the new evidence would be merely cumulative impeachment evidence. Gilmore further argues that Unit already attacked his credibility at trial,[4] and

---

[4] Gilmore admitted at trial that he had falsely stated in his deposition that he did not play semi-professional football for the Victoria Texans in 2013:

8

yet the jury still found Gilmore credible; therefore, the newly discovered evidence would not produce a different result. I disagree. The new evidence is not cumulative with respect to the original fact it raised: Gilmore was employed in 2014 and 2015. Critically, there is no information in the trial record that evidences Gilmore was employed after his release from Accurate; Gilmore affirmatively testified to the contrary. Thus, there is no existing evidence for the newly discovered evidence to be cumulative. *See Payne v. Douglas*, 241 S.W. 238, 240 (Tex. App.—El Paso 1922, writ dism'd w.o.j.) ("While the evidence . . . is largely in rebuttal of the evidence of the appellee, and partakes of the nature of impeaching evidence, it is also original evidence, in that it tends to show that appellee did not sustain serious or permanent injuries, and . . . formed a proper basis for the motion.").

Gilmore alternatively argues that the new testimony would still not provide jurors with enough specificity to compare Gilmore's actual earnings before and after his injury since his employer could not precisely recall how much money he paid Gilmore out of pocket in 2014 and 2015. However, Cantu's statement that Gilmore was paid "maybe [$]100 to [$]150, $175 whenever he does work in a week" over a two-year period stands in stark contrast to the $0 presented to the jurors. The fact that more than half of the

---

[Counsel]: Well, you never played for the Victoria Texans according to your testimony, correct?

[Gilmore]: Yes, sir.

(End of deposition clip.)

[Counsel]: Again, was that the six—five, fifth time, sir, that we asked you that question, and again under oath you said something that wasn't true, correct?

[Gilmore]: Yes, ma'am.

9

total damages awarded to Gilmore were for past and future loss of earning capacity also bolsters the material significance of this newly discovered evidence and the probability of its existence producing a different outcome at trial. *Cf. Bich Ngoc Nguyen v. Allstate Ins. Co.*, 404 S.W.3d 770, 784 (Tex. App.—Dallas 2013, pet. denied) (holding trial court did not abuse its discretion in denying Bich's motion for new trial based on Bich's inability to prove materiality).

The extent and severity of Gilmore's injuries were extensively litigated, with experts opining on both sides. Gilmore's own expert based his damages model on Gilmore's self-reported work history, starting from when Gilmore was laid off from Accurate in May 2013, because there was no evidence of employment after that date. Unit has brought forth evidence to successfully demonstrate each of the *Waffle House* factors, and as a consequence, the trial court erred in denying Unit's motion for new trial. *See Waffle House*, 313 S.W.3d at 813. Therefore, I would reverse the trial court's judgment on this basis. With these thoughts, I concur in the judgment of the Court.

GREGORY T. PERKES
Justice

Delivered and filed the
10th day of October, 2019.